**NIMETZ v. SHELL OIL CO. et al.**

Civil Action No. 26668.

District Court of the United States for the District of Columbia.

Nov. 7, 1947.

David G. Bress and Alvin L. Newmyer, Jr., both of Washington, D. C., for plaintiff, for the motion.

Richard W. Galiher, of Washington, D. C., for defendant, opposed.

HOLTZOFF, Associate Justice.

This is an action to recover damages for personal injuries caused by a fall into a pit used for greasing motor vehicles and located on the grounds of a gasoline filling station owned by the defendant Shell Oil Company. The Court directed a verdict for the defendant on the basis of the opening statement of the plaintiff's counsel. The plaintiff now moves for a new trial. In view of the earnestness with which plaintiff's counsel urges his contentions, the Court has reviewed the matter, but as a result of study and further consideration, is adhering to the ruling originally made, for the reasons about to be explained.

The facts as they appear in the opening statement of plaintiff's counsel may be summarized as follows:

On the evening of February 7, 1944, the plaintiff was a passenger in an automobile driven by a friend. Their destination was a place of entertainment in Washington, D. C., known as Uline Arena. A few blocks from the Arena, they passed a gasoline filling station, which was dark and was closed for the night. They drove into the station grounds and left their automobile there. Apparently, other private automobiles had also been placed there by others. On prior occasions private cars were left at the filling station without permission by persons who were proceeding to Uline Arena. When the plaintiff and his friend returned and were about to reach their automobile, the plaintiff stumbled and fell into a pit used for greasing motor vehicles. As a result of the fall, the plaintiff suffered personal injuries, for which he seeks to recover damages. The gasoline filling station was owned by the defendant Shell Oil Company, and was operated by the defendant William R. Lacey, who died subsequently to the commencement of this action.

The basic and fundamental issue governing the disposition of this case is the plaintiff's status in relation to the premises, i. e., whether he was an invitee, a licensee, or a trespasser. The plaintiff claims that he was a licensee. It is the view of this Court, however, that he was a trespasser.

Obviously, the plaintiff entered the premises without any claim of right. If we revert to fundamental principles, we find the following explanation in Blackstone's Commentaries, Book III, Ch. XII, p. 209: "Every unwarrantable entry on another's soil the law entitles a trespass by breaking his close: the words of the writ of trespass commanding the defendant to show cause quare clausum querentis fregit. For every man's land is, in the eye of the law, enclosed and set apart from his neighbor's; and that either by a visible and material fence, as one field is divided from another by a hedge; or by an ideal, invisible boundary existing only in the contemplation of law, as when one man's land adjoins to another's in the same field."

Lord Camden in the celebrated case of Entick v. Carrington, 2 Wils. K.B. 275, 291, made the following observations: "* * * our law holds the property of every man so sacred, that no man can set his foot upon his neighbour's close without his leave; if he does he is a trespasser, though he does no damage at all; if he will tread upon his neighbour's ground, he must justify it by law."

The Restatement of the Law of Torts, Section 329, defines a trespasser as follows: "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise."

What constitutes a trespasser has been summarized by the Circuit Court of Appeals for the Second Circuit in Heller v. New York, N. H. & H. R. Co., 265 F. 192, 194, 17 A.L.R. 823, in the following manner: "Every unauthorized entry on another's property is a trespass and any person who makes such an entry is a trespasser. A trespasser is one who goes upon the premises of another without invitation, express or implied, and does so out of curiosity, or for his own purposes or convenience, and not in the performance of any duty to such owner. It is not necessary that one in making such an entry should have any unlawful intent."

The foregoing quotation is manifestly applicable to the plaintiff's situation when he entered the filling station. Plaintiff's coun-

sel are endeavoring to deduce an implied license from the fact that on prior occasions other persons had pursued the same course as that adopted by the plaintiff and that others had done the same thing on the evening in question. The conclusion to be inferred from these facts, however, is that the defendant suffered from numerous trespasses instead of from only one.

If while A is away from his home, B drives an automobile into A's front yard, leaves it there, and then stumbles into a depression on A's property, B has no cause of action against A for personal injuries so sustained in view of the fact that B is a trespasser. The same result follows if on several prior occasions B had driven and left his automobile in A's yard and in A's absence, or if C, D, and E had done the same thing. The fact that A may have been aware of the trespass is immaterial. He is under no obligation to barricade his property, or to incur the expense of employing someone to watch the place and exclude trespassers. Mere failure to take affirmative steps to prevent repetitions of a trespass does not transform the trespasser into a licensee, unless indeed the trespasses continue over a period long enough to ripen into a prescriptive right.

The plaintiff urges that the rule is otherwise as to places used for business purposes. No distinction in principle is perceived, however, between a trespass on real property used as a residence and a trespass on real property devoted to business. For example, an intruder into a store at night, who is injured by a fall on a defective stairway, may not recover damages from the owner of the property. Even if the door had been left open or unlocked, and even if the intruder acted in good faith and entered for an innocent purpose of his own, the same principle would apply.

In the instant case, the plaintiff entered the property while it was closed for business. He did not come as a prospective customer. He took advantage of the fact that the place was not barricaded and entered without permission for objects of his own. Clearly in so doing he was a trespasser, no matter how innocent and harmless his purpose may have been. The fact that he saw others pursue the same course, or that on prior occasions others did the same thing, would not change his position to that of a licensee. On the contrary, the other persons who entered the property under similar circumstances were also trespassers.

The Court of Appeals for the District of Columbia stated in Branan v. Wimsatt, 54 App.D.C. 374, 378, 298 F. 833, 837:

"Persons engaged in business may be considered as inviting the public to do business with them, and to enter their stores or places of business for that purpose; but it can hardly be said that that invitation is broad enough to include those who have no business to transact, and enter from curiosity or for their own interest, convenience, or gratification.

\*     \*     \*     \*     \*     \*

"Neither can it be said that an owner who tolerates a trespass, and who takes no steps to interfere with the practice, has impliedly extended an invitation to either invade or use his premises."

It is well settled that the owner or occupier of real property owes no duty to a trespasser to maintain the property in a safe condition, because the trespasser takes the risk when he enters the property. The only obligation affecting a trespasser is to abstain from the infliction of an intentional, wanton, or wilful injury, as well as not to maintain some hidden engine of destruction. Mendelowitz v. Neisner, 258 N.Y. 181, 184, 179 N.E. 378.

As heretofore stated, the plaintiff urges that he was not a trespasser but a licensee. The Court deems this contention to be untenable. Nevertheless, it may be added that even if it were sustained, it would not aid the plaintiff. In this respect, the duty in respect to a licensee is no greater than that owed to a trespasser.

In Radio Cab v. Houser, 76 App.D.C. 35, 36, 128 F.2d 604, 605, Mr. Chief Justice Groner, summarized this principle as follows: "His (i. e. occupier's) freedom from liability arises where the injuries are caused by reason of the unsafe condition

4

of the premises, as to which the licensee takes the risk."

In Morse v. Sinclair Automobile Service Corporation, 5 Cir., 86 F.2d 298, in which the facts were similar to those presented in the case at bar, the court held that under such circumstances there is no liability to a licensee.

The plaintiff relied principally on the case of Standard Oil Co. v. Decell, 175 Miss. 251, 166 So. 379, which was decided by a divided vote. There are two strong dissenting opinions. Moreover, on close analysis, even the majority opinion is hardly an authority for the plaintiff's position, although superficially the facts of that case seem parallel to those here involved. In the cited case, the filling station was located on city property, which had been used as a public way for years. The plaintiff entered the station, not for any purpose of his own, but on a mission of interest to the operator of the station. For both these reasons, the plaintiff could hardly have been considered to be a trespasser.

In view of the foregoing disposition of the matter, it does not appear necessary to discuss the respective duties and liabilities of the defendant Shell Oil Company, the owner of the property, and the defendant Lacey, the operator of the station.

Motion for a new trial is denied.