## FIRFER et ux. v. UNITED STATES.
### No. 11676.

United States Court of Appeals
District of Columbia Circuit.
Argued June 8, 1953.
Decided Dec. 10, 1953.

Mr. Miller W. Marshall, Washington, D. C., for appellant.

Mr. Robert M. Scott, Asst. U. S. Atty., Washington, D. C., with whom Mr. Ross O'Donoghue, Asst. U. S. Atty., Washington, D. C., was on the brief, for appellee. Messrs. Charles M. Irelan, U. S. Atty., and William R. Glendon, Asst. U. S. Atty. at time brief was filed, Washington, D. C., were also on the brief for appellee. Mr. Leo A. Rover, U. S. Atty. at time of argument, Washington, D. C., entered his appearance for appellee. Mr. William J. Peck, Asst. U. S. Atty., Washington, D. C., also entered his appearance for appellee.

Before CLARK, PROCTOR * and BAZELON, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from a dismissal of the complaint in an action for damages for personal injury under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671 et seq. (Supp.1952). The facts, as they appear in appellants' opening statement and from certain photographs and plats submitted to the Court with appellee's consent, as a part thereof, may be summarized as follows:

The Jefferson Memorial in Washington, D. C., is maintained by the Federal Government for the use and pleasure of the citizens generally and the public is permitted and invited to visit it. The Memorial consists of a marble rotunda with a large statue of Thomas Jefferson in the center, surrounded by lawns and shrubbery at varying levels. The rotunda is reached by a wide flight of stairs at what for the sake of convenience may be termed the "front" side of the edifice. Except for these stairs, the rotunda is encircled by three step-like formations, or "stylobate" steps, each approximately twenty-three to twenty-eight inches high. At the bottom of the third step is a rather large grassy plot, bounded on one side by the aforementioned stylobate steps, on the other by a retaining wall which drops some ten feet down to another grassy area, and on the right and left by thick hedges and shrubbery. The other architectural and landscaping features of the monument are not material to this case.

In 1950, during the so-called Cherry Blossom season, appellants Mr. and Mrs. Firfer, and a young relative, were on a visit to the Jefferson Memorial. They entered the marble structure by the stairs at the front, but at the conclusion of their visit, rather than leaving the way they came in, proceeded through an open space between the columns in the rear in the hope of finding a short-cut to their parked automobile. Just outside the columns they "jumped" the three stylobate steps down to the grassy plot, traversed that plot until faced with the sharp drop created by the retaining wall, and then retraced their steps to the edge of the marble structure. While so walking on the grassy plot, Mr. Firfer stepped into one of several deep holes in the ground and as a result of that accident sustained the injuries which form the basis for this action. The United States, through its agents, had notice of the existence of the holes or depressions in the grassy plot.

At the conclusion of the opening statement, the Government moved for a directed verdict and the Court dismissed the complaint upon the ground that the Firfers were trespassers at the time the injury was sustained.

■ There is no question as to the power of the trial court to direct a verdict for defendant following plaintiff's opening statement if it becomes apparent from that statement that plaintiff would have no cause of action even if he were able to prove by competent evidence all of the allegations made therein. Best v. District of Columbia, 1934, 291 U.S. 411, 415, 54 S.Ct. 487, 78 L.Ed. 882;

* Judge Proctor, as a member of the sitting division, heard argument in this case, participated in conference and concurred in this opinion, but died before the decision of the case.

Oscanyan **v.** Arms Co., 1880, 103 U.S. 261, 26 L.Ed. 539.

■ Plaintiff is of course entitled to the benefit of all inferences which might be drawn from the facts stated, Greene v. Hathaway, 1951, 89 U.S.App.D.C. 229, 191 F.2d 656, for if there is any doubt as to his failure to state a claim upon which relief can be granted, the matter must be left to the jury for determination, or where, as here, the Court sits without jury, he should be permitted to put on his entire case. For the dismissal to be sustained, therefore, it must appear clearly and unequivocally from the opening statement that appellants could have no recovery.

The Federal Tort Claims Act provides in pertinent part as follows:

> "§ 2674. Liability of the United States. The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances * * *." 28 U.S.C. § 2674.

Appellants stated that the Government had ownership of and control over the place of injury and knowledge that the hazard complained of existed, that there was an injury to Mr. Firfer as a result of that condition on the Government's land, and that both Mr. and Mrs. Firfer sustained monetary damages because of that injury. The crucial remaining element for the establishment of tort liability hinges upon the answer to the question whether failure to remove the condition which ultimately caused the accident was a violation of any duty owed by the United States to Mr. Firfer. Cf. McClelland v. Baltimore & O. C. T. R. Co., 7 Cir., 1941, 123 F.2d 734. The duty owed and the degree of care required to be exercised by the landowner in turn depend upon the status of the injured person at the time of the accident; i. e., on whether he was an invitee, some type of licensee, or a trespasser.

■ The District of Columbia follows the mutual benefit theory with regard to invitees. Arthur v. Standard Engineering Co., 1951, 89 U.S.App.D.C. 399, 193 F.2d 903, certiorari denied, 1951, 343 U.S. 964, 72 S.Ct. 1057, 96 L.Ed. 1361. In other words, only a person who goes upon the land of another for the purpose of there carrying on some transaction for the benefit of both parties (or for the benefit of the landowner alone) can attain the status of an invitee.

Invitor-invitee relationships are usually dependent upon the existence of an intention to carry on some commercial transaction. Obviously, in this case no such transaction was contemplated and no such relationship was in existence.

■■ There are two general classes of licensees: (1) licensees by invitation (direct or implied), and (2) bare licensees or licensees by acquiescence.[1] The first category is usually regarded as consisting of persons invited upon the land not for the benefit of the landowner but by him either by some affirmative act or by appearances which would justify a reasonable person in believing that such landowner (or occupant) had given his consent to the entry of the particular person or of the public generally. If the licensee by direct or implied invitation is within the scope and the chronological and geographical limits of the invitation, he may expect the owner and his agents to exercise reasonable and ordinary care and to provide reasonably safe premises, Gleason v. Academy of the Holy Cross, 1948, 83 U.S.App.D.C. 253, 168 F.2d 561; Restatement, Torts § 342 (1934), and he may hold the owner liable for injuries resulting from active negligence. Radio Cab v. Houser, 1942, 76 U.S.App.D.C. 35, 128 F.2d 604.

1. It is to be noted that not all the cases clearly draw the distinction between the two classes of licensees, nor, indeed, between bare licensees and trespassers. But it will generally be found that the difference in treatment accorded various persons is explainable only in terms of a difference in status.

■ The bare licensee, on the other hand, is on the land of another, not by invitation or permission but by mere sufferance or acquiescence, Boneau v. Swift & Co., Mo.App.1934, 66 S.W.2d 172, 175. He takes upon himself the risk of unconcealed dangers which are natural to the place and can be avoided by proper care. Branan v. Wimsatt, 1924, 54 App.D.C. 374, 298 F. 833, certiorari denied, 1924, 265 U.S. 591, 44 S.Ct. 639, 68 L.Ed. 1195.

■ The owner's duty to such a person is less than that owed to a licensee by invitation: he is merely required to refrain from wanton injury and he should not knowingly permit such licensee to run upon a hidden peril or a hidden engine of destruction. Ford v. United States, 10 Cir., 1952, 200 F.2d 272; Chicago Great Western Ry. Co. v. Beecher, 8 Cir., 1945, 150 F.2d 394, certiorari denied, 1946, 326 U.S. 781, 66 S.Ct. 339, 90 L.Ed. 473.

■■ Finally, a trespasser is "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement, Torts, § 329 (1934). The difference between a trespasser and a bare licensee is that the former commits (technically) a wrong to the landowner by being on the premises; while the latter, by virtue of consent or acquiescence of the owner, does not. But as regards a claim of negligence against the owner of the land there is no distinction between them; each alike must take the premises as he finds them, and cannot hold the owner to liability based upon negligence in failing to make the premises safe. Texas Pac. Coal & Oil Co. v. Bridges, Tex.Civ.App. 1937, 110 S.W.2d 1248, 1251. They may recover only for intentional, wanton, or willful injury or the maintenance of a hidden engine of destruction. See Nimetz v. Shell Oil Co., D.C.1947, 74 F.Supp. 1; Mendelowitz v. Neisner, 1932, 258 N.Y. 181, 179 N.E. 378.

No contention was made that the injuries suffered by Mr. Firfer were the result of an intention to do harm, and, while the hole in the ground may have been hidden from the view of a casual observer, it does not, in our opinion, qualify as a hidden engine of destruction. Thus, if at the time of the accident, Mr. Firfer's status was either that of a trespasser or that of a bare licensee the Government cannot possibly be subject to liability. Appellants could recover only if, from the facts alleged, the inference could be drawn that Mr. Firfer, at the time and place of the injury, was either an invitee or a licensee by invitation.

■ Appellants, as members of the public, were of course invited to visit the Jefferson Memorial and its grounds, and while within the scope and area of that invitation, they undoubtedly were entitled to the protection accorded by the law to express or implied licensees. See Hanson v. Lehigh Valley R. Co., 3 Cir., 1941, 120 F.2d 498, certiorari denied, 314 U.S. 645, 62 S.Ct. 86, 86 L.Ed. 518; Briney v. Illinois Cent. R. Co., 1948, 401 Ill. 181, 81 N.E.2d 866. But it appears from appellants' own opening statement and the photographs introduced as a part thereof that when the accident happened they were not in a place where the public generally was invited and welcomed. The grassy plot was inaccessible to the public in any normal and ordinary manner and a person could enter it in only one of three ways; by climbing a ten-foot retaining wall, by squeezing through a thick hedge, or by jumping three "steps" each with a riser of two feet or more.[2] It must be apparent to any reasonable person that the Government, had it intended the grassy plot to be used by the public, would have maintained a more comfortable and convenient method of ingress and egress than that provided here. The fact that no warning signals were posted—while not referred to in the opening statement but urged upon us

2. The vertical difference between the third step and the grassy plot seems to be    much closer to three feet than to two feet.

here—is of no significance since the natural and artificial obstacles to an entry onto the grassy plot area were warning enough in themselves. Compare Gibson v. Lamesa Cotton Oil Co., 5 Cir., 1950, 178 F.2d 959, 961. It is of course well settled that a person lawfully upon the premises of another is bound to leave them by the usual, ordinary, and customary way in which such premises are and have been departed from; and if, for his own convenience or some other reason he takes another and is injured, he cannot recover. Cohen v. Davies, 1940, 305 Mass. 152, 25 N.E.2d 223, 129 A.L.R. 735; Mazey v. Loveland, 1916, 133 Minn. 210, 158 N.W. 44, L.R.A.1916F, 279; Armstrong v. Medbury, 1887, 67 Mich. 250, 34 N.W. 566; 38 Am.Jur. Negligence § 100.

In Scheibel v. Lipton, 1951, 156 Ohio St. 308, 102 N.E.2d 453, the plaintiff, a social visitor, stepped into a depression or hole in the front lawn somewhat to the side of a paved walk to the house and he was injured. The Court, denying recovery, said that where the landowner provided a paved walk or driveway, he was not required to go further and fill all depressions and level all mounds in the front yard so that someone choosing to cross the yard in the dark rather than walk up the driveway might not misstep and fall. The conduct of plaintiff in leaving the paved walk and proceeding across the front lawn "cannot be said to have been within the reasonable expectations of his hosts."

When Mr. Firfer left that portion of the Monument grounds which is set aside for the public, he exceeded the scope of his license and became a trespasser, or, at best, if we take into consideration the statements made before this Court that unimpeded use of the grassy plot by some other members of the public indicated some sort of acquiescence, a bare licensee. We need not decide whether he was the one or the other, for in either event, appellants would be precluded from recovering.

Affirmed.