**William S. COOPER, Appellant,**

v.

**William R. GOODWIN et al.**

**No. 71–1100.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 21, 1972.

Decided Feb. 12, 1973.

M. Michael Cramer, Washington, D. C., with whom Paul H. Weinstein and Laurence Levitan, Chevy Chase, Md., were on the brief, for appellant.

Patrick J. Attridge, Washington, D. C., for appellees.

Before BAZELON, Chief Judge, SIMON E. SOBELOFF,* Senior Circuit Judge for the Fourth Circuit, and LEVENTHAL, Circuit Judge.

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. 152 U.S.App.D.C. 86, 469 F.2d 97 (1972).

BAZELON, Chief Judge:

This is an appeal from a directed verdict for the appellees on appellant Cooper's claim that he was injured by reason of Mr. and Mrs. William Goodwin's negligent maintenance of their basement stairs. We reverse and remand this case for trial under the standard established by this court's opinion in Smith v. Arbaugh's Restaurant, Inc.[1]

I.

The relevant facts are not in dispute. On November 26, 1967, the appellant Cooper was invited for a social visit at the home of his friends the Goodwins. At the conclusion of his call, the Goodwins indicated to Cooper that he should leave through the basement area of the house. As Cooper started to descend the final three stairs down into the basement, he slipped. He reached for a handrail, but there was none. He fell and injured his back. Cooper subsequently underwent disc surgery and contends that he has suffered a serious, incapacitating injury as a result of the Goodwins' negligence.

Cooper filed suit in the District Court, claiming damages for his medical expenses, loss of earnings, and pain and suffering.[2] He alleged that the Goodwins had been negligent in several respects: their failure to have a handrail on the stairs; failure to have stair treads; maintaining a highly slippery coat of wax on the stairs; and their failure to warn of such conditions. The Goodwins denied these allegations, and raised as a defense that Cooper had been contributorily negligent in failing to "exercise reasonable care for his own safety while descending the stairs in the light of the obvious conditions."[3]

On the first day of trial, January 7, 1971, Cooper testified that as he placed his foot on the fatal step, it felt "very slippery just like you step on a sheet of

2. The judgment sought in his complaint was $100,000 plus interest and costs.

3. Pretrial Proceedings, November 16, 1970, p. 3.

ice;" that he "tried to grab ahold of something, but there wasn't anything to grab hold of." [4] He also stated that Mr. and Mrs. Goodwin had not warned him that the stairs were waxed, or that the handrail, which was on the stairs when he had visited the year before, was missing.

Cooper's counsel also introduced into evidence a portion of section 2508 of the Housing Code of the District of Columbia:

> Interior stairs more than two risers high shall have an enclosing wall, balustrade, or other guard on each side and shall have a hand rail on at least one side.

The trial court correctly ruled that this regulation was "admissible, but solely for the purpose of permitting the jury to consider it in determining whether or not there was exercise of due care on the part of the defendant" and not as negligence per se. [5] The judge stated that at the close of the trial, he would charge the jury in detail as to the consideration it should give this housing regulation.

On the following day, at the close of Cooper's case, the Goodwins moved for a directed verdict on the ground that since Cooper was a social guest toward whom the homeowners owed only the duty of refraining from *active* negligence, no actionable negligence had been shown. The trial court agreed, stating "in my opinion there is no evidence of negligence in the case which would warrant it to go to the jury" and granted the motion. [6]

From this ruling, Cooper now appeals.

## II.

This case illustrates the problems which, as we pointed out in our recent ruling in Smith v. Arbaugh's, [7] result from rigid applications of the common law classifications of trespasser, licensee and invitee to determine the duty of care owed by a landowner/occupier to persons entering upon his property. Harshness inheres because the trial judge removed from the province of the jury the determination of crucial factual issues and resolved them himself. [8] Confusion over the exact duty owed to Mr. Cooper, a social guest responding to an explicit invitation to use the basement stairs, is apparent in the cases cited by counsel for their respective contentions. [9]

---

4. Appellant's Appendix at pp. 3–4.

5. Appellant's Appendix at p. 17. In order to facilitate our own ruling on this issue, this court requested appellees to file a supplemental memorandum on the question of whether this regulation, promulgated in 1966, is applicable to owner-occupied single-family homes constructed prior to its enactment; and whether it is strictly enforced. Both parties filed memoranda. On the basis of these submissions, we have determined that, while the regulation technically applied to appellees' home, in view of the Corporation Counsel's enforcement practices, the regulation is admissible only as evidence of negligence.

6. Appellant's Appendix at p. 18. The judge stated to the jury: "[T]he plaintiff has not established a case of liability on the part of the defendants. True, he was injured, but there has to be more than that. There must be a showing of actionable negligence by the defendants, and I have ruled as a matter of law that there

is no showing of negligence on the part of the defendants." *Id.* at 19.

7. *Supra* note 1.

8. *See* Smith v. Arbaugh's Restaurant, Inc., *supra* note 1, 152 U.S.App.D.C. at 92, 469 F.2d at 103. In this case, the judge took from the jury the question of the degree of danger created by the waxed steps and the missing handrail; and the question whether these dangers were not discernible and should therefore have been the subject of a warning.

9. Both parties rely primarily on Firfer v. United States, 93 U.S.App.D.C. 216, 208 F.2d 524 (1953). The definition of the duty owed to a licensee by invitation is not only confusing, but conflicted. He "may expect the owner and his agents to exercise reasonable and ordinary care and to provide reasonably safe premises . . . and he may hold the owner liable for injuries resulting from active negligence." (citations omitted) *Id.* at 219, 208 F.2d at 527. Understandably, Cooper relies on the first phrase, the Goodwins on the latter.

The trial court undoubtedly relied on the legal rule that a social guest may recover for active negligence only.[10] This ruling, while it may have once comported with existing case law, we now hold to be in error.[11]

The standard adopted in *Smith*—that "a landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances,"[12] seeks to eliminate the harshness of and confusion over the common law classifications. Furthermore, as discussed in *Smith,* we believe that this standard places the crucial determination—whether Cooper suffered from an unfortunate accident, from his own carelessness, or from the Goodwins' negligence—where it should be, with the jury and not the court. It is for the jury to consider and weigh *all the circumstances* of Cooper's fall, including those which affect the foreseeability of the injury,[13] the burden of avoiding the injury, and the care which appellant as a reasonable man could be expected to take for his own safety.

There may be some concern that less-affluent home owners and apartment dwellers will be severely penalized for the hazards of their dwelling places which they cannot afford to repair or remove. However, the financial capacity of the occupant to undertake safety precautions should be taken into account in determining what was, for him, reasonable maintenance conduct. Financial hardship should be no excuse for failing to take those measures which are within a defendant's capacity—for example, an adequate warning. Despite the fears expressed in the concurrence, both this and the *Smith* opinion hold that the duty to maintain one's property might be fully discharged by a warning of a dangerous condition. We are therefore not persuaded that owners of residential property should be excluded from the standard of reasonable care under all the circumstances.

Under this standard, the jury will have wide latitude to exercise its own rough common sense as to the degree of care which was reasonable for particular home owners or dwellers to take toward their guests. As we said in *Smith* this standard cannot be set in the abstract but will vary according to the circumstances of each and every case. Rather than rely on rigid labels and rules of law to provide the illusion of certainty and fairness, we choose the jury as the mature institution to take account of the infinite variety of fact situations which affect the reasonableness of human conduct.[14]

10. Since the trial judge himself admitted the D.C. housing regulation as evidence of a standard of *reasonable* conduct from which the Goodwins deviated, his ruling of no negligence must have been premised on a different standard of care. There is, of course, some controversy as to what constitutes *active* negligence. Gleason v. Academy of the Holy Cross, 83 U.S.App. D.C. 253, 168 F.2d 561 (1948) establishes that property owners do owe to their social guests the duty of warning them of known but latent dangers. The trial judge's refusal to allow this issue to go to the jury may thus have violated existing case law.

11. Although appellant did not have the benefit of the *Smith* opinion when preparing his appeal, he asserts that by a series of decisions in the District of Columbia, the discrete categorization of a social guest has been abandoned. In

*Smith,* this process was brought to fruition.

12. Smith v. Arbaugh's Restaurant, Inc., *supra* note 1, 152 U.S.App.D.C. at 89, 469 F.2d at 100.

13. Such as, in this case, the condition of the stairs, the absence of the handrail, the visibility of these factors, the hosts' knowledge of any danger, and the guest's familiarity with the premises and expectations toward his hosts. It would appear, although we need not decide, that the question of what degree of care should be exercised toward those traditionally labelled "trespassers" will, under the logic of this standard, depend to a large extent on the foreseeability of their presence and hence the foreseeability of the injury.

14. *See* Smith v. Arbaugh's Restaurant, Inc., *supra* note 1, 152 U.S.App.D.C. at 89–92, 94, 469 F.2d at 100–103, 105.

Accordingly, appellant Cooper is entitled to a new trial at which the jury is instructed that the Goodwins owed him the duty of maintaining their property in a condition reasonably safe under all the circumstances. Whether or not the Goodwins breached this duty is a question for the jury.

Reversed and remanded.

LEVENTHAL, Circuit Judge, concurring:

The rule established by this court prior to Smith v. Arbaugh's Restaurant [1] requires reversal of the judgment of the District Court. Plaintiff's counsel called the court's attention to the proposed Jury Instructions prepared by the Bar Association which set forth, insofar as pertinent: [2]

> "A Landowner owes to a guest (or licensee by invitation) the duty to avoid injuring him through negligence. In addition, he owes him the duty to repair dangerous conditions which are known to the owner and which would not be discernible to the guest or licensee, or to warn him of the existence of such dangerous conditions."

This suggested instruction was annotated with a reference to Firfer v. United States [3] which clearly supports the wording in the text. However, the defendant's counsel persuaded the District Court to read *Firfer* in such a way so as to require active negligence, and to dismiss the case for lack of showing of active negligence. In my view this was a most strained reading, and the dismissal was error.

As for the retrial, I agree with the majority that the sound evolution that is the hallmark of the common law has brought it at the present time to the point where the traditional distinction between licensees and invitees is properly considered the relic of a bygone age. The often technical and arbitrary classifications—including *Firfer's* further subdivision into invitees; licensees by invitation (social guests) and bare licensees—seem to promote confusion, and to straitjacket the courts in pursuit of good sense and justice.

In England the legislature adopted the recommendation of the Law Reform Committee to abolish the significance of the common law distinction between invitees, licensees, and contractual visitors, and to place on an occupier of premises the same duty—described as the "common duty of care"—to all lawful visitors.[4] However, the English reflection is not necessarily precedent for revision of instructions to the jury as a "mature institution." Indeed, it appears that the fact that the jury has virtually disappeared from negligence actions in England may have played some part in encouraging passage of the law.[5] But the concept was ripe for extension, and has been applied in the United States by the Supreme Court in an admiralty decision,[6] and then by the courts of California, Hawaii, Colorado, and recently, after our *Smith* opinion, by the Minnesota Supreme Court.[7]

This does not, however, mean that the requirements of judicial administration in a modern, largely urban, industrialized society necessarily extend so far as to require a change in the liability of an occupant of land to a trespasser. I would follow the example of the Minnesota court, and defer, as a separate question, the issue of liability to tres-

1. 152 U.S.App.D.C. 86, 469 F.2d 97 (1972).

2. Revised Standardized Jury Instruction for the District of Columbia, of the Bar Association of the District of Columbia (rev. ed. 1968) #143 prepared by Junior Bar Association. The same wording appears in the 1963 edition, #128.

3. 93 U.S.App.D.C. 216, 208 F.2d 524 (1953).

4. Payne, The Occupier's Liability Act, 21 Modern L.Rev. 359 (1958).

5. Prosser, Torts § 58 (3d ed.).

6. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

7. Peterson v. Balach, 294 Minn. 161, 199 N.W.2d 639 (1972).

passers, which was left unchanged in England. This was the problem that particularly prompted my separate opinion in *Smith*. The restraint counseled by the Minnesota court, on the ground that the issue of a plaintiff-trespasser was not before the court, is enhanced as to this court by the circumstances that it is no longer the authoritative expositor of the common law of the District of Columbia. So long as our modification of doctrine is not automatically extended for the benefit of trespassers, I agree that the general statement of doctrine need not distinguish between business and residential properties. In the case of trespassers, a higher duty may rightly be put on the occupier of a business property by virtue of both accessibility of insurance and the business reasons that tolerate what is technically a trespass. As for the majority's comment that owners of residences may soundly be put under an obligation to trespassers because the owners' financial position can be taken into account, if this means what it says, and owners of side-by-side residences may have different legal obligations depending on their financial means, it is an extraordinary statement for a judicial opinion, and in my view it is, as stated, an unsound proposition.

I don't think it is proper to instruct the jury that the Goodwins owed plaintiff Cooper "the duty of maintaining their property in a condition reasonably safe under all the circumstances." To begin with, language should be selected so as to provide in the direct statement of the rule for awareness that the liability may be discharged by giving a warning. More important, I would limit myself, at this time, to a statement of duty that is focused both on a person invited or permitted on the premises and on his reasonably expected use. I would follow the Minnesota opinion (fn. 7), and instruct the jury that a person who occupies land (or is otherwise responsible for its condition) has the duty to take such care, as in all the circumstances of the case is reasonable, to see that any

person invited or permitted on the premises will be reasonably safe in using the premises for a purpose that was reasonably to be expected.

SOBELOFF, Senior Circuit Judge, concurring:

My brethren, Judges Bazelon and Leventhal, are in agreement that the traditional distinctions between licensees and invitees are an archaic remnant of the common law and tend to confuse rather than assist in reaching a just resolution of disputed questions of liability. They agree further that with regard to all but trespassers no distinction should be made in the standard used to adjudicate the liability of occupiers of business and the occupiers of residential properties. In these sentiments, I fully concur.

Judge Bazelon would have the trial judge instruct the jury that the Goodwins owed Cooper "the duty of maintaining their property in a condition reasonably safe under all the circumstances." Judge Leventhal, on the other hand, would phrase this instruction as "the duty to take such care, as in all circumstances is reasonable, to see that any person invited or permitted on the premises will be reasonably safe in using the premises for a purpose that was reasonably to be expected." In respect to all but the question of the duty owed a trespasser, I see no meaningful distinction between the two formulations, although Judge Bazelon's seems preferable as it is a simpler, more lucid explanation of the law and will be more easily understood by a jury. Under either proposed instruction, the jury is to consider in its deliberations all the circumstances surrounding the injury.

Only on the question of liability to a trespasser do Judges Bazelon and Leventhal lock horns. Judge Bazelon would extend the "all the circumstances" test to include the duty of care owed a trespasser. *See* Bazelon Opinion at Footnote 13. Judge Leventhal seemingly would have the circumstances test govern only the liability to trespassers upon

business property,[1] but would maintain the rule that "a householder has no legal duty, as to trespassers entering without his consent, * * * subject to limited exceptions."[2] Actually, the question of the degree of care owed by property owners to trespassers is not presented in this case; it was neither briefed nor argued. The discussion about the duty to trespassers is entirely gratuitous and without foundation in the record. I would refrain, under these circumstances, from fully endorsing the position of either of my two distinguished colleagues in respect to the property owner's liability to trespassers and would defer deciding this question until it is properly before the court and has been maturely developed in briefs and arguments upon a record that squarely raises the issue.

---

1. In the case of trespassers, a higher duty may rightly be put on the occupier of a business property by virtue of both accessibility of insurance and the business reasons that tolerate what is technically a trespass.
   Leventhal Concurring Opinion at p. 658.

2. Smith v. Arbaugh's Restaurant, Inc., 152 U.S.App.D.C. 86, 97, 469 F.2d 97, 108 (1972) (Leventhal concurring).