*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-1210

ERIC TOOMER, APPELLANT,

v.

WILLIAM C. SMITH & CO., INC., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-8675-12)

(Hon. Anthony C. Epstein, Trial Judge)

(Submitted May 13, 2014                    Decided March 26, 2015)

*Keith W. Watters* and *Patricia D. Watters* were on the brief for appellant.

*Patricia H. Beall* and *Jennifer E. Cameron* were on the brief for appellee.

Before FISHER and BECKWITH, *Associate Judges*, and KING, *Senior Judge*.

BECKWITH, *Associate Judge*: Appellant Eric Toomer filed a negligence suit for injuries sustained while climbing a fence owned and maintained by appellee William C. Smith & Company (Smith), a company that develops and manages real estate. The trial court granted summary judgment to Smith. We reverse and remand for proceedings consistent with this opinion.

## I.

Mr. Toomer was repairing his wife's car in the parking lot of his apartment complex when his pet dog, Rocky, escaped and ran through a gap in the steel fence bordering the neighboring Skyland Apartments, a property managed by Smith. Fearing that he would lose Rocky, Mr. Toomer tried to climb the fence by "holding onto the top" and "throwing [his] body over." While doing so, Mr. Toomer's hands slipped on grease on the fence, and his left calf was impaled on the fence post. Skyland management had intentionally applied the grease to deter trespassers, placing no warning signs on the fence. Mr. Toomer, who suffered serious injuries to his leg, including an infection he said was caused by the grease, sued under a negligence cause of action.

The trial court granted summary judgment to Smith. Applying the standard of care owed to trespassers, the court noted that Mr. Toomer could only recover for "intentional, wanton, or willful injury or the maintenance of a hidden engine of destruction," citing *Firfer v. United States*, 208 F.2d 524, 528 (D.C. Cir. 1953).[1] *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) (holding that D.C. Circuit

---

[1] The trial court declined to address whether Mr. Toomer's entry was privileged. Citing *Firfer*, 208 F.2d at 528, for the proposition that a landowner owes the same duty of care to a trespasser and a licensee, the court ruled that "any privilege would not affect the nature of the landowner's duty" and concluded that Mr. Toomer's privilege to enter *vel non* was therefore irrelevant.

decisions prior to February 1, 1971, "constitute the case law of the District of Columbia" unless overruled by this court en banc). The court ruled that the grease on the fence was "not hidden, and no reasonable jury could find otherwise," relying on evidence that the grease was "obvious to the touch" and was "visible to the naked eye" in a post-accident photograph. Mr. Toomer appealed.

## II.

Mr. Toomer first argues that the trial court incorrectly concluded that the grease on the fence was "open and obvious." On summary judgment, we must examine the record in the light most favorable to the non-moving party, and "[a]ny doubts about the existence of a factual dispute must be resolved in favor of the non-moving party." *Ivey v. District of Columbia*, 949 A.2d 607, 611 (D.C. 2008) (alteration in original) (internal citation and quotation marks omitted). Sworn testimony indicated that Mr. Toomer did not see the grease—which was black on a black fence—prior to grabbing onto the fence and that he did not feel the grease until his hands had already slipped, leading to his injury. Although the record also contained evidence to the contrary, we agree with Mr. Toomer that, taking the evidence in the light most favorable to him, a reasonable jury could have found that the grease was "hidden."

Whether the grease was "open and obvious" is not legally relevant, however,

if Mr. Toomer was a trespasser. Even if the grease were hidden, Mr. Toomer cannot recover as a trespasser unless he shows that Smith caused him "intentional, wanton, or willful injury" or "maint[ained] . . . a hidden engine of destruction" by placing grease on the fence. *Boyrie v. E & G Prop. Servs.*, 58 A.3d 475, 477 (D.C. 2013) (quoting *Firfer*, 208 F.2d at 528). This court has, in passing, characterized a hidden engine of destruction as "a trap," *see WMATA v. Ward*, 433 A.2d 1072, 1074 (D.C. 1981), and the courts of the only other jurisdiction we have found to use this standard—New York—have described a hidden engine of destruction as "spring guns or kindred devices," *Carbone v. Mackchil Realty Corp.*, 71 N.E.2d 447, 449 (N.Y. 1947) (quoting *Mendelowitz v. Neisner*, 179 N.E. 378, 379 (N.Y. 1932)). With reference to both traps and spring guns, the Supreme Court of the District of Columbia[2] described a landowner's liability to trespassers under the common law as follows:

> [T]he owner would only be liable [to a trespasser] in case of some willful injury, such as secretly depositing spring guns where they could not be seen, in a place likely to be traveled over by a stranger, who might be a trespasser, or pitfalls similarly concealed. In such a case as that, it is conceded that the owner of the premises would be liable,

---

[2] This court was renamed the United States District Court for the District of Columbia in 1936. *See* History of the Federal Judiciary: U.S. District Court for the District of Columbia, Federal Judicial Center (Jan. 20, 2015), http://www.fjc.gov/history/home.nsf/page/courts_district_dc.html.

> *because there the injury is willful. The purpose and object of the owner* of the premises in creating these dangerous places, or depositing dangerous weapons, liable to be discharged by a person stepping on them, *is willful and wicked*.

*Greenwell v. Wash. Mkt. Co.*, 21 D.C. 298, 303-04 (D.C. 1892) (emphasis added); *see also United States v. Gilliam*, 25 F. Cas. 1319, 1320 (D.C. Crim. Ct. 1882) (noting that a party is liable for use of a spring gun "as if he were present himself and fired the weapon"). Following this logic, common law tort liability for "maintenance of a hidden engine of destruction" similarly requires "willful and wicked" intent—that is, intent to harm trespassers with a hidden device. This intent requirement makes sense given that a trespasser may only otherwise recover for "intentional, wanton, or willful injury." *Boyrie*, 58 A.3d at 477.

The D.C. Circuit's decision in *Firfer* likewise makes clear that liability for "maintenance of a hidden engine of destruction" only attaches when the owner intends to harm trespassers. When discussing liability to "bare licensees," the court stated that the owner must "not knowingly permit such licensee to run upon a hidden peril or a hidden engine of destruction."[3] 208 F.2d at 528. With respect to liability to trespassers, however, the court limited liability to "intentional, wanton, or willful injury or the maintenance of a hidden engine of destruction." *Id.* This

---

[3] This aspect of *Firfer* is no longer good law. See *infra* note 8.

distinction demonstrates that "maintenance" of a hidden engine of destruction requires something more than "knowingly" allowing it to persist such that someone might unwittingly "run upon" it. Indeed, in denying the landowner's liability to a trespasser, the *Firfer* court stressed that "[n]o contention was made that the injuries suffered by Mr. Firfer were the result of an intention to do harm." 208 F.2d at 528.

Courts applying D.C. tort law have concluded that a landowner did not maintain a hidden engine of destruction when the owner negligently created a dangerous condition or allowed it to exist without a warning sign. In *Lacy v. Sutton Place Condominium Ass'n*, *Inc.*, 684 A.2d 390 (D.C. 1996), we summarily stated that faulty floorboards in an attic ceiling did not constitute a hidden engine of destruction. *Id.* at 393. In *Firfer*, the D.C. Circuit held that a hidden hole in the ground was not an engine of destruction. 208 F.2d at 528. And the federal district court ruled in an unpublished opinion that a gate designed to keep individuals out of the subway tunnels was not an engine of destruction where an alleged defect permitted a person to pass through it and enter the tunnel. *Whittaker v. WMATA*, No. 82-2771, 1984 U.S. Dist. LEXIS 16712, at *16-17 (D.D.C. May 14, 1984)).

Contrary to Smith's contention here, *Whittaker* is not on all fours with this case. There is no denying that Smith intentionally applied grease to the fence and created a dangerous condition. Yet Mr. Toomer's complaint did not allege that

Smith intended to cause injury to him or other trespassers—he solely raised a claim of negligence.[4] And even if we consider the more sweeping statements Mr. Toomer made in his brief in opposition to Smith's motion for summary judgment in the trial court,[5] Mr. Toomer cannot point to any record evidence suggesting that Smith intended to injure trespassers. At best, Mr. Toomer pointed to deposition statements made by Patrick McKenzie, Smith's asset manager, suggesting that Smith knew that people could get hurt on the greased fence. But knowledge of a possibility of injury is not the same as intention to bring about an injury. *See Firfer*, 208 F.2d at 528; *cf. Grillo v. Nat'l Bank of Wash.*, 540 A.2d 743, 744 (D.C. 1988). Instead, the record shows that Smith applied the grease as a

---

[4] At one point Mr. Toomer alleged, somewhat confusingly, that Smith's "negligence in failing to post warning signs was intentional, wanton and willful." He clarified, however, that his injuries "were solely caused by Defendant's negligent failure to post any warning signs" and that his physical and financial injuries were both "a direct and proximate result of the negligence of the Defendant."

[5] Mr. Toomer claimed that by applying grease, Smith "created a dangerous, unsafe condition [and] without a warning about the hidden hazard, its conduct amounted to intentional, wilful, wanton behavior." Mr. Toomer further asserted that "[t]he very acts of greasing the fence and failing to warn of the hazard . . . demonstrate that William C. Smith was expecting trespassers and intended to injure them."

deterrent to keep people from climbing over the fence.[6] Even viewing the record in the light most favorable to him, Mr. Toomer cannot identify evidence creating a genuine dispute of material fact that Smith applied grease to the fence *in order to injure trespassers*. Therefore, a reasonable jury could not conclude that Smith maintained a hidden engine of destruction under our case law. If classified as a trespasser, then, Mr. Toomer is not entitled to relief.

## III.

Mr. Toomer alternatively argues that Smith owed him a duty of reasonable care as a licensee because his entry onto the Skyland Apartments property was privileged.[7] The trial court did not decide whether Mr. Toomer's entry was

---

[6] Smith employees testified in their depositions that Smith had difficulty with trespassers entering to break into apartments or evade police at several other Smith properties, so Smith applied grease to fences at all of its properties as a preventative measure. Although Mr. Toomer's expert indicated that there were other safer and more effective ways to prevent trespassers, the availability of safer feasible alternatives speaks to negligent, not intentional, harm. *See* Restatement (Second) of Torts § 292 (1965).

[7] Mr. Toomer does not make this contention in his initial brief to this court—it first appears in his reply brief. We opt not to treat this point as abandoned, however. *See In re Shearin*, 764 A.2d 774, 778 (D.C. 2000). As this argument was raised, fully briefed, and clearly addressed in the trial court, Smith was not prejudiced by Mr. Toomer's oversight in his appellate briefing. *See Glover v. District of Columbia*, 77 A.2d 788, 789 (D.C. 1951) (deciding appeal on the merits when violations of rules regarding briefs did not result in prejudice to appellee). Moreover, Mr. Toomer's argument does not require us to "delve into

(continued…)

privileged, citing *Firfer*, 208 F.2d at 528, for the proposition that privilege was irrelevant because licensees and trespassers are entitled to the same duty of care. But *Firfer* is no longer good law in our jurisdiction in this respect. *See Foshee v. Consol. Rail Corp.*, 849 F.2d 657, 660 (D.C. Cir. 1988) (Wald, C.J., dissenting) (explaining that *Firfer* continues to apply in trespass cases but no longer applies to licensees).[8] Under current District of Columbia tort law, licensees are entitled to a duty of reasonable care, whereas trespassers are not. *Boyrie*, 58 A.3d at 477; *Holland v. Balt. & Ohio R.R. Co.*, 431 A.2d 597, 599-601 (D.C. 1981) (en banc) (citing *Blumenthal v. Cairo Hotel Corp.*, 256 A.2d 400 (D.C. 1969), and *District of Columbia Transit Sys., Inc. v. Carney*, 254 A.2d 402 (D.C. 1969)) (affirming *Firfer* with respect to trespasser cases but noting that we "adopted a reasonable care standard as to plaintiffs viewed as invitees or licensees"); *Ward*, 433 A.2d at 1074 (Ferren, J., concurring). Whether Mr. Toomer was a licensee or trespasser is

---

(…continued)

complex and seemingly difficult" issues. *Cf. Aeon Fin., LLC v. District of Columbia*, 84 A.3d 522, 530 (D.C. 2014).

[8] In fact, *Firfer* drew a distinction between "bare licensees" and "licensees by invitation (direct or implied)," the former of which were treated like trespassers but the latter of which were treated like invitees. 208 F.2d at 527-28. D.C. tort law no longer distinguishes between types of licensees or between licensees and invitees. *See Young v. Sherwin-Williams Co.*, 569 A.2d 1173, 1177 n.7 (D.C. 1990) (citing *Holland v. Balt. & Ohio R.R. Co.*, 431 A.2d 597, 599–601 (D.C. 1981) (en banc)).

therefore central to his claim.[9]

For duty of care purposes, a trespasser is one "who enters or remains upon land in the possession of another *without a privilege to do so* created by the possessor's consent *or otherwise*." *Boyrie*, 58 A.3d at 477-78 (emphasis added) (quoting *Firfer*, 208 F.2d at 528). Thus a person entering pursuant to a lawful privilege is not a trespasser under D.C. law. *Saidi v. United States*, No. 14-CM-136, slip op. at 8-9 (Feb. 26, 2015) (stating that a person entering land in exercise of a private necessity privilege is not a trespasser). This mirrors section 345 (1) of the Restatement (Second) of Torts (1965), which provides that a person "who enters the land only in the exercise of a privilege, for either a public or private purpose, and irrespective of the possessor's consent," is entitled to the standard of care of a licensee. The duty of care owed to Mr. Toomer therefore turns on whether or not his entry onto Smith's property was privileged.

---

[9] If Mr. Toomer was a licensee subject to a duty of reasonable care, he has produced sufficient evidence to survive summary judgment. *See Campbell v. Noble*, 962 A.2d 264, 266 (D.C. 2008) (noting that "an owner of property has a duty to exercise reasonable care to cure a dangerous condition" of which he has actual or constructive notice and over which he has right to exercise control). Moreover, Smith would not be entitled to an "open and obvious" defense as a matter of law, *see, e.g.*, *WMATA v. Barksdale-Showell*, 965 A.2d 16, 25 (D.C. 2009), for the reasons given in the first paragraph of Section II, *supra*.

Mr. Toomer argues that his entry onto Smith's property was justified by the private necessity privilege to "prevent serious harm to . . . [his] chattels." Restatement (Second) of Torts § 197 (1) (1965). Under this provision,

> [w]here the actor enters for the protection of himself or his property, it is sufficient for the existence of the privilege that the actor's conduct is necessary or reasonably believed by him to be necessary for the purpose of protecting himself, his land or chattels, and that his entry and the measures taken by him are reasonable in the light of all the circumstances. . . . [T]he probable advantage to the actor to be expected from the entry must be weighed against the probable detriment to the possessor of the land or other persons properly upon it.

*Id.* cmt. c;[10] *see also Morgan v. Foretich*, 546 A.2d 407, 411 (D.C. 1988) (explaining that the criminal necessity defense requires reasonable belief of imminent harm and no reasonable legal alternative). Smith argued in the trial court that this privilege was inapplicable because "[t]here was no threat of serious harm" to Mr. Toomer's dog. But Mr. Toomer alleged that Rocky did not respond to commands while chasing squirrels or cats and he was "afraid that the dog would

---

[10] *See also Benamon v. Soo Line R. Co.*, 689 N.E.2d 366, 370 (Ill. App. Ct. 1997) (noting that a plaintiff must have reasonable belief of threat of harm *and* action taken to avoid threat must be reasonable); *Protectus Alpha Navigation Co. v. N. Pac. Grain Growers, Inc.*, 585 F. Supp. 1062, 1068 (D. Or. 1984) (same), *aff'd*, 767 F.2d 1379 (9th Cir. 1985).

become lost, or that [the dog] might hurt or injure someone else."[11]  A reasonable jury could conclude (1) that Mr. Toomer reasonably believed his entry was necessary to protect Rocky or others and (2) that both his entry and his manner of entry were reasonable in light of all the circumstances, including the negligible harm it would cause Smith.  *Cf. Rossi v. DelDuca*, 181 N.E.2d 591, 593-94 (Mass. 1962) (holding that a jury could find that entry onto a property to escape a dog attack was privileged).  Smith was therefore not entitled to summary judgment and we remand for further proceedings consistent with this opinion.  *See Person v. Children's Hosp. Nat'l Med. Ctr.*, 562 A.2d 648, 651 (D.C. 1989) (remanding when there was a dispute of material facts regarding whether defendant's actions were privileged); *cf. N.Y. State Energy Research & Dev. Auth. v. Nuclear Fuel Servs., Inc.*, 561 F. Supp. 954, 975-76 (W.D.N.Y. 1983) (noting that summary judgment is only appropriate when no reasonable person could believe actions

---

[11]  In fact, Rocky was a pit bull, a dog breed that has at times been subject to government regulation for what some legislators perceived to be its particular dangerousness.  *See McNeely v. United States*, 874 A.2d 371, 379 & n.9 (D.C. 2005) (outlining the District's short-lived Pit Bull and Rottweiler Dangerous Dog Designation Emergency Amendment Act of 1996); *Tracey v. Solesky*, 50 A.3d 1075, 1080 (Md. 2012) ("Because of its aggressive and vicious nature and its capability to inflict serious and sometimes fatal injuries, pit bulls and cross-bred pit bulls are inherently dangerous."), *superseded by statute*, Md. Code Ann., Cts. & Jud. Proc. § 3-1901 (2014).

were privileged).[12]

*So ordered.*

---

[12] Given its disposition of the case, the trial court did not consider Smith's arguments concerning proximate cause and contributory negligence, and Smith may press these arguments on remand. We take no position on their merits.