WILEY, APPELLANT, *v.* NATIONAL GARAGES, INC. ET AL., APPELLEES.

(No. 8590 — Decided November 26, 1984.)

*Thomas A. Schaffer,* for appellant Shirley Wiley.

*Leo F. Krebs,* for appellees National Garages, Inc. and Federated Department Stores, d.b.a Shillito/Rike's.

BROGAN, P.J. On the third day of January 1982, appellant drove her car up the Ludlow Street ramp of appellees' parking garage passing under an "enter" sign. As it was a Sunday afternoon, the garage was not open for business although it was open for use, since appellees customarily allowed free parking to the public on Sundays.

Appellant observed that the arm of the ticket gate was in an "up" position. Since the ticket dispenser was not in operation, she did not receive a parking ticket or receipt. Appellant paid no money or any thing of value in return for parking in appellees' facility.

Appellant intended to walk from the parking garage to the Winters Bank Tower. She noticed no attendants on duty. After parking her car near other cars on the second level, appellant began descending the stairway. She was then sexually assaulted by an unknown assailant.

Appellant brought suit on December 3, 1982 to recover damages for injuries she sustained when she was sexually assaulted in appellees' parking garage as a result of appellees' alleged negligence.

On September 30, 1983, this matter came before the trial court on appellees' motions for summary judgment. The issue presented by the motions was the duty of care owed to appellant by the appellees, which depended upon whether appellant's status at the time of her assault was that of an invitee or a licensee. The trial court determined that appellant was a licensee and that appellees ac-

cordingly had no duty to protect appellant from the criminal acts of third persons. Additionally, the trial court found that appellees breached no duty of care by failing to warn her of possible attacks.

In its decision, the trial court took the view that in order to be a business visitor one must "* * * 'rightfully [be] on the premises of another for purposes in which the possessor * * * has a beneficial interest,' " referring to the first paragraph of the syllabus in *Scheibel* v. *Lipton* (1951), 156 Ohio St. 308 [46 O.O. 177]. The trial court relied on the following in determining appellant's status in the instant case: (1) that appellant entered the parking garage strictly for her own purpose and convenience, (2) that the garage was apparently closed for business purposes, and (3) that appellant paid no fee to park there.

From the trial court's judgment of September 30, 1983, appellant has appealed asserting as the first of her two assignments of error that the trial court erred in awarding summary judgment to appellees because appellant was in fact an invitee rather than a licensee and appellees accordingly owed her the duty of ordinary care.

Appellant contends her status at the time of the assault was that of an invitee, since by leaving the garage open for members of the public to park therein appellees impliedly invited her to enter onto the premises. Alternatively, appellant contends that, even assuming arguendo she was a licensee at the time of her attack, appellees had a duty to warn her of known dangers, which in this case was the high incidence of sexual assaults which appellant contends appellees knew had occurred in their garage.

Appellees, on the other hand, contend that appellant entered the garage solely for her own purposes and that they received no benefit from her entrance therein. Appellees contend also that appellant was not invited to use the parking garage, but that her presence in the garage was only tolerated and therefore appellant had the status of a licensee and that accordingly they owed her no duty with respect to the criminal acts of third persons.

The owner or occupier of land is not an insurer of the safety of the patrons whom he invites on the land, but rather owes them the duty to exercise ordinary care consistent with the purposes of the invitation, and to maintain the land in a reasonably safe condition for the protection of the invitees. *Englehardt* v. *Philipps* (1939), 136 Ohio St. 73 [15 O.O. 581].

The requirement of some "economic benefit" to the landowner as a precondition of liability was undoubtedly based in part on the feeling that to permit recovery by the visitor who came upon the land without conferring any such benefit would be to award ingratitude. See *Indermaur* v. *Dames* (1866) 1 [English] Law Reports, Common Pleas 274. The rule may also have had its foundation in the feeling that the requirement of such an economic benefit was a way of insuring that the landowning enterprise be charged only with its actual "economic" costs of operation. So regarded, the rule may be "akin" to the scope-of-employment limitation upon liability under the doctrine of *respondeat superior*. See Calabresi, Some Thoughts on Risk Distribution and the Law of Torts (1961), 70 Yale L.J. 499.

Although it has been recited in a large number of cases and adopted by some of the courts, the theory, that a technical invitation and the resulting duty to exercise reasonable care exists only where some economic benefit to the landowner is involved in the visit, has been criticized as not supported by the early cases relied upon by its advocates. In addition it may be argued that the "economic benefit" test in striving for what seemed to be a desirable result has

so attenuated the concept of "economic benefit" as to leave it with little real content. *Kermarec* v. *Compagnie Generale Transatlantique* (1959), 358 U.S. 625.

Furthermore, since the economic benefit test depends upon the purpose for which the visitor came to the land, it must under many circumstances turn upon a determination of his subjective state of mind. Obviously, such a rule encourages the unscrupulous plaintiff to devise, *ex post facto*, a satisfactory business purpose which will satisfy the rule.

As a result of these inadequacies, some years ago a number of legal writers and courts rejected "economic benefits" as the exclusive test of invitee status, and have advanced what has been called "the public invitation" test, "by the terms of which one may be found to be an invitee whenever he comes upon the land of another under circumstances justifying the conclusion that the landowner intended to open his land to public use for the purposes for which the entrant came, the visitor being entitled to assume that the landowner has taken reasonable steps to make the premises reasonably safe for the contemplated use, and the landowner being held liable for injury resulting from his failure to do so." Annotation (1964), 95 A.L.R. 2d 992, 999.

The Restatement of the Law 2d, Torts (1965), Section 332, of which Professor Prosser was the Reporter, abandons the economic benefit test as the exclusive test, and adopts as an additional test the public invitation test. See, also, 2 Harper & James, The Law of Torts (1956) 1478, Section 27.12.

In determining the duty of care owed by possessors of land to others for the acts of third persons, Ohio courts have followed the standards set forth in 2 Restatement of the Law 2d, Torts (1965): *Holdshoe* v. *Whinery* (1968), 14 Ohio St. 2d 134 [43 O.O.2d 240] (Sections 332 and 344); *Howard* v. *Rogers* (1969), 19 Ohio St. 2d 42 (Section 344);

*Townsley* v. *Cincinnati Gardens, Inc.* (1974), 39 Ohio App. 2d 5 [68 O.O.2d 72]; *Daily* v. *K-Mart Corp.* (1981), 9 Ohio Misc. 2d 1 (Sections 332 and 344). It is fundamental that the legal status of the injured party is what determines the standard of care he or she is owed by the possessor of the land. In the instant case, appellant's status is governed by Section 332 of the Restatement of the Law 2d, Torts (1965), which provides that an invitee may be either a "business visitor" or a "public invitee." That section defines a "public invitee" as:

"(2)   * * * a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public."

Further, a person need *not* pay any benefit to be a public invitee as defined by Section 332(2). Comment *d* to Section 332(2), at page 179, in part provides:

"Where land is held open to the public, it is immaterial that the visitor does not pay for his admission, or that the possessor's purpose in so opening the land is not a business purpose, and the visitor's presence is in no way related to business dealings with the possessor, or to any possibility of benefit or advantage, present or prospective, pecuniary or otherwise, to the possessor."

In its decision, the trial court stated that any indirect benefit of enhanced good will that appellees received for their retail store from allowing free public parking on Sundays was not a sufficient benefit to accord appellant invitee status as a business visitor.

This view illustrates an erroneous assumption under which the trial court operated, to wit, that the business activity to which appellant was invited was shopping in the retail store of one of the appellees. Under the Restatement's definition of public invitee, the possessor's *motive* in holding the land open to the public is immaterial. Thus, whether the garage was customarily left open as a gratuitous gesture to appellees' park-

ing patrons or as a promotion for its affiliated retail store is not a pertinent issue in determining appellant's legal status.

Rather, appellant's status as a public invitee must be resolved by determining whether she entered or remained on appellees' premises for the purpose for which the land was held open and whether she was invited to use the garage. As established by the documentary evidence in this case, the purpose for which appellees' parking garage was held open on Sundays was for free public parking. It is undisputed that appellant entered the garage for the purpose of parking, and not for some other purpose.

"Although invitation does not in itself establish the status of the invitee, it is *essential* to it. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so. Any words or conduct of the possessor which lead or encourage the visitor to believe that his entry is desired may be sufficient for the invitation. A common form of invitation is preparation of the land for the obvious purpose of receiving the visitor, and holding it open for that purpose. * * *

"Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee, as stated in § 330; * * *." (Emphasis added.) 2 Restatement of the Law 2d, Torts (1965), Section 332, Comment *b*.

Comment *c* to Section 332 discusses the factors important in determining invitation:

"In determining whether a particular person is an invitee, *the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor.* It is immaterial that the person is one whom the possessor is not willing to receive as an invitee if the possessor's words or other conduct are understood, and would be understood by a reasonable man, as indicating the possessor's willingness. The nature of the use to which the possessor puts his land is often sufficient to express to the reasonable understanding of the public, or classes or members of it, a willingness or unwillingness to receive them. * * *" (Emphasis added.)

Thus, it is clear the invitation may be an express or an implied one. The facts surrounding the invitation must be assessed from an objective, rather than from a subjective perspective.

Comment *d* to Section 332 discusses land held open to the public and provides:

"Where land is held open to the public, there is an invitation to the public to *enter for the purpose for which it is held open.* Any member of the public who enters for that purpose is an invitee. Anyone who enters for another purpose is not an invitee unless he falls under Subsection (3).

"Thus where a strip of private land abutting upon the public sidewalk is so paved that it is indistinguishable from the sidewalk, the possessor holds it open to the public as provided for public use for the purpose of passage, and anyone so using it is an invitee. The possessor's duty to use reasonable care to keep such land in proper and safe condition is not far removed from his obligation to the public upon the highway itself, or to those who stray a few feet from it in the course of travel.

"*It is not enough, to hold land open to the public, that the public at large, or any considerable number of persons, are permitted to enter at will upon the land for their own purposes. As in other instances of invitation, there must be some inducement or encouragement to enter,*

*some conduct indicating that the premises are provided and intended for public entry and use, and that the public will not merely be tolerated, but is expected and desired to come.* When a landowner tacitly permits the boys of the town to play ball on his vacant lot they are licensees only; but if he installs playground equipment and posts a sign saying that the lot is open free to all children, there is then a public invitation, and those who enter in response to it are invitees.

"Where land is held open to the public, it is immaterial that the visitor does not pay for his admission, or that the possessor's purpose in so opening the land is not a business purpose, and the visitor's presence is in no way related to business dealings with the possessor, or to any possibility of benefit or advantage, present or prospective, pecuniary or otherwise, to the possessor." (Emphasis added.)

In *Hannan* v. *Ehrlich* (1921), 102 Ohio St. 176, at 185, the Supreme Court defined a licensee as one who goes upon the lands of another by permission or acquiescence for his own pleasure or convenience and not by invitation; as a licensee he exercises the license with the attendant risk and danger. In *Hannan,* the administrator brought a petition for relief on behalf of a eight-year-old boy who was killed in a sand pit owned by the defendant when sand and soil fell upon the boy. The petition alleged that children were accustomed to enter defendant's property and use it as a playground and that defendant knew or should have known by the exercise of ordinary care of the condition of the sand pit, but, nevertheless, "permitted, allowed and acquiesced" in the use of said sand pit and grounds by the children. *Id.* at 185.

After defendant demurred to the petition, the demurrer was sustained by the trial court. On appeal, the court of appeals affirmed, and the Supreme

Court also affirmed. The Supreme Court held the petition at best sustained a finding that the child was a licensee. As such, the licensor owed him no duty except to refrain from wantonly or willfully injuring him, and the licensee should not be exposed to hidden dangers, pitfalls or obstructions. *Id.* at 185-186.

*Hannan* was decided prior to the issuance of the Restatement of the Law 2d, Torts, but the definition of licensee in *Hannan* closely parallels the Comments to Section 332 of the Restatement. As in *Hannan,* appellant herein has used language of permission in her complaint. She alleges that the "defendants failed to exercise ordinary care in permitting the garage to be open to the plaintiff for parking when no security guards * * * were on duty." Appellant alleges in her complaint that no barriers or gates were erected to give her notice that the parking garage was not open "for business as usual." Yet she responded in answers to defendants' interrogatories that she came to the garage on a Sunday and that, while the gate was up at the entrance ramp, the ticket machine was not operating. Appellant could hardly argue that the parking garage was open "for business as usual," *i.e.,* a parking lot where the entrant pays for entering and parking.

*Hannan* can be distinguished to some degree from the facts *sub judice.* In *Hannan,* the child entered defendant's property to play in a sand pit which was not designed for play purposes. Here, appellant entered a parking lot to use it for the purposes for which it was designed and held open to the public, *i.e.,* parking. *Hannan* did not resolve who could be considered a "public invitee," as the decision preceded by many years this new classification of invitee.

There was no express invitation extended by appellees to appellant to use their parking garage. The question of whether there was "an implied invitation" is more difficult to resolve. Ap-

pellees admit in their motion for summary judgment that the public was permitted to park on the premises when the garage was not open.

"* * * There are many cases in which an invitation has been implied from circumstances, such as custom, the acquiescence of the owner in habitual use, the apparent holding out of premises to a particular use by the public, or simply the general arrangement or design of the premises. * * *" 62 American Jurisprudence 2d (1972) 281, 282, Premises Liability, Section 44.

In *Kennedy* v. *Phillips* (1928), 319 Mo. 573, 585, 5 S.W. 2d 33, 37, the court stated:

" 'The word "invitation" used in the rule covers and includes in it enticement, allurement and inducement * * * *or it may arise from known customary use.* * * * So, too, it is held in all the cases that the invitation may be implied by any state of facts upon which it naturally and reasonably arises.' " (Emphasis added.)

In *Firfer* v. *United States* (C.A.D.C. 1953), 208 F. 2d 524, at 527, the Circuit Court of Appeals for the District of Columbia stated that the District of Columbia "follows the mutual benefit theory with regard to invitees * * * [and that] only a person who goes upon the land of another for the purpose of there carrying on some transaction for the benefit of both parties (or for the benefit of the landowner alone) can attain the status of an invitee." However, the court went on to state that there were two general classes of licensees, licensees by direct or implied invitation, and bare licensees, the first category being "usually regarded as consisting of persons invited upon the land not for the benefit of the landowner but by him either by some affirmative act or by appearances which would justify a reasonable person in believing that such landowner * * * had given his consent to the entry of the particular person or of the public generally.

* * *" Id. The court added that if such a licensee was within the scope and chronological and geographical limits of the invitation, "he might expect the owner and his agents to exercise reasonable and ordinary care and to provide reasonably safe premises, * * *" and might hold the owner liable for injuries resulting from active negligence. *Id.*

"The question whether one suing for damages for personal injuries was a licensee or invitee of the defendant is a question for the jury where the status depends upon issues of fact created by a contrariety of evidence, but the question of whether undisputed facts, essential to determination of the plaintiff's status, show him to be a licensee or invitee, is a legal question for the court." 62 American Jurisprudence 2d (1972) 274, 275, Premises Liability, Section 39.

The facts are not in dispute in this lawsuit. Their legal ramifications are. We hereby find that the facts at best establish appellant to have been a licensee. There is no evidence that appellees induced or encouraged appellant to park her car in the parking lot. Her presence in the parking lot was simply tolerated or permitted. See, *Hannan, supra,* and 2 Restatement of the Law 2d, Torts (1965), Section 332, Comment *d.*

Under the existing decisional law of Ohio a licensor owes a licensee no duty except to refrain from wantonly or willfully injuring her and not to expose her to any hidden danger, pitfall or obstruction. If the licensor knows of the presence of any such danger, the licensee must be alerted to any danger which the licensor has reason to believe the licensee will not discover. *Salemi* v. *Duffy Construction Corp.* (1965), 3 Ohio St. 2d 169 [32 O.O.2d 171], at paragraph two of the syllabus; *Hannan* v. *Ehrlich, supra,* at paragraph four of the syllabus; *Soles* v. *Ohio Edison Co.* (1945), 144 Ohio St. 373 [29 O.O. 559], at paragraph one of the syllabus; *Railroad Co.* v. *Harvey*

(1907), 77 Ohio St. 235; *Chadwick* v. *Ohio Collieries Co.* (1928), 31 Ohio App. 311.

"A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if, * * * (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and * * * (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and * * * (c) the licensees do not know or have reason to know of the condition and the risk involved." 2 Restatement of the Law 2d, Torts (1965), Section 342.

Civ. R. 56(C) provides in pertinent part:

"* * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"

See, also, *Williams* v. *First United Church of Christ* (1974), 37 Ohio St. 2d 150 [66 O.O.2d 311].

In answers to interrogatories, appellees admitted knowledge of two incidents where individuals claimed that they were attacked at Rike's parking garage. Appellees stated that these two incidents occurred in 1979 or 1980, and neither occurred on a Sunday. The alleged attack occurred on a Sunday in January 1982. Construing the evidence most favorably to appellant, appellees were not guilty of any willful or wanton acts, or affirmative misconduct, or of a failure to warn appellant of any hidden danger which they knew of or could have reasonably foreseen.

A licensee takes the premises subject to the attendant perils and risks. *Brown* v. *Rechel* (1959), 108 Ohio App. 347, 353-354, citing *Hannan* v. *Ehrlich, supra*. The danger or risk to which appellant was exposed was not dissimilar to that danger encountered in parking almost anywhere in today's society. As such, reasonable minds could not differ that appellees violated no duty owed to appellant, or were guilty of any negligence in failing to warn appellant of any hidden danger. As such, the trial court properly granted summary judgment against appellant and in favor of the appellees.

The first assignment of error is overruled.

In appellant's second assignment, she contends that the trial court erred in overruling her motion for relief from judgment after newly discovered evidence disclosed that appellees allegedly misrepresented the number of prior incidents of sexual attacks on their premises.

In response to interrogatories, appellees stated that they were aware of only two prior sexual attacks having occurred on their premises, to wit the parking garage, in the six years prior to January 1982. Neither attack occurred on a Sunday. The trial court found that two isolated instances of assaults in the parking garage over six years did not constitute a hidden danger of the premises.

Judgment was entered for the defendants on September 30, 1983. Appellant moved to vacate the judgment on November 7, 1983. In the motion for relief pursuant to Civ. R. 60(B)(2) and (3), counsel contended that appellees' answers to the interrogatories were false. In a memorandum attached to the motion, counsel stated they now had in their possession police reports which verified that eight sexual attacks occurred on the appellees' garage premises between April 17, 1978 and

April 26, 1981 (three occurred on a Sunday). Counsel also contended that the records revealed that appellees' security personnel were present on three of the occasions.

Appellant contended to the trial court that this new evidence raised a jury question as to whether appellees had sufficient notice of the danger, and thus a duty to protect and warn the public.

Appellees filed the affidavit of Laurence Kroger on November 28, 1983, who stated that he had been in charge of security at Rike's since 1975; that he had no personal knowledge of any of the eight incidents referred to in appellant's memorandum; that Rike's records fail to reflect the incidents; and that when an assault victim reports an incident to Rike's, a written report is made of the event.

Counsel for appellees also argued that the police reports were available prior to this litigation being instituted, and that appellant could not claim that the reports now constituted newly discovered evidence. Counsel also pointed out the three Sunday attacks do not reveal the presence of Rike's security personnel or that appellees were aware of the incidents.

The trial court overruled the motion for Civ. R. 60(B) relief finding appellees had no duty to warn appellant of the likelihood of criminal assault when she was only a gratuitous licensee in the garage. Also, the court found the police reports constituted evidence which by "due diligence" could have been discovered by appellant. In any event, they did not contradict appellees' representations that were based on their personal knowledge.

The granting or denial of a motion for relief from judgment under Civ. R. 60(B) is discretionary with the trial court; and, in the absence of a clear showing of abuse of discretion, the trial court's decision should not be disturbed

upon appeal. *Adomeit* v. *Baltimore* (1974), 39 Ohio App. 2d 97, 103 [68 O.O.2d 251].

The Supreme Court in *GTE Automatic Electric* v. *ARC Industries* (1976), 47 Ohio St. 2d 146 [1 O.O.3d 86], in paragraph two of the syllabus, held:

"To prevail on a motion brought under Civ. R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken."

Civ. R. 60(B) states, in part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time * * *."

Appellant has failed to demonstrate how her newly discovered evidence could not have been discovered by due diligence. Appellant sustained her injury on January 3, 1982, the lawsuit was filed on December 3, 1982, and the court granted summary judgment on Septem-

ber 30, 1983. The gist of the lawsuit was that appellees had allegedly failed to warn appellant of the fact that others had been criminally assaulted in their parking garage. An obvious source of information concerning reported criminal assaults at the downtown parking garage was the Dayton Police Department. Nonetheless, appellant has failed to demonstrate that she ever sought such information from the police by subpoena or otherwise.[1] There must be finality to judgments, and thus due diligence must be exercised in the preparation of litigation.

Additionally, we do not find that appellant demonstrated that appellees misrepresented any facts or engaged in any misconduct giving rise to relief under Civ. R. 60(B)(3). Three of the assaults occurred on Sunday when appellees' security personnel were not present. There is no reason to believe appellees knew of these incidents. They specifically have denied knowledge through Laurence Kroger's affidavit. At best, the reports reflect security persons employed by appellees were aware of three incidents of assault during the three-year period, 1978-1981. Appellees admit knowledge of two such alleged incidents of assault. We do not believe such a discrepancy merits relief from final judgment. Accordingly, the trial court did not abuse its discretion in denying appellant relief from the judgment. Accordingly, the assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

---

[1] Civ. R. 56(F) permits the opponent of a motion for summary judgment to certify that he cannot present by affidavit facts essential to justify his opposition to the motion, and the court may deny the motion, order a continuance to permit discovery to be had or any other order that is just.

WEBER and WILSON, JJ., concur.

WILSON, J., concurring. I concur in the judgment in this case for the reasons given in the majority opinion.

Other considerations being equal and barring some overriding public purpose, rules of law should promote economic efficiency. Posner, Economic Analysis of Law (2 Ed. 1977). A rule of law which would give the appellant the status of an invitee under the facts of this case would provide an incentive to limit the use of the parking facility. In short it would result in an inefficient rule of law.