[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] AMENDED OPINION
Petitioner-appellant, Ancil Perry, ("appellant"), appeals a Clermont County Court of Common Pleas, Domestic Relations Division, decision to vacate his dissolution decree and to award attorney fees to petitioner-appellee, Julia Perry ("appellee"). We affirm.
On February 23, 1968, the parties were married. On February 21, 1996, appellant filed a petition for dissolution. The parties submitted a separation agreement ("Agreement") to the court which included the division of marital property and required appellant to pay $500 per week in spousal support. Appellee agreed to the terms of the Agreement without advice of counsel. On April 12, 1996, the trial court granted the dissolution.
On March 12, 1997, appellant filed a motion to terminate his spousal support obligation claiming that appellee was cohabiting with another individual. On April 2, 1997, appellee filed a Civ.R. 60(B) motion seeking relief from judgment and to vacate the Agreement. Appellee claimed that appellant fraudulently undervalued his ownership in A.W. Industries Inc. ("A.W.") and fraudulently failed to disclose assets in the Agreement. On June 29 and 30, 1998, the trial court heard both motions. The trial court denied appellant's motion to terminate spousal support, but did not issue a judgment entry. The trial court then heard appellee's Civ.R. 60(B) motion.
Appellee called Cameron D. Ryan, a certified public accountant, to testify. The purpose of Ryan's testimony was to inform the court of the value of A.W. at the time of the Agreement and to demonstrate that appellant grossly undervalued A.W. Before Ryan could testify, appellant requested a continuance because he had only recently received Ryan's valuation report of A.W. ("Report"). The trial court granted appellant's request and continued the hearing until July 9, 1998.
On July 9, 1998, the trial court concluded the hearing on appellee's motion to vacate the Agreement. By judgment entry filed on September 16, 1998, the trial court granted appellee's motion for relief from judgment under Civ.R. 60(B)(1) and (3). On September 30, 1998, the trial court entered its decision that appellant's motion to terminate spousal support was moot. On October 13, 1998, appellant filed an appeal with this court.
By judgment entry filed on December 2, 1998, the trial court corrected an error in its September 30, 1998 judgment entry, stating that appellant's motion to terminate spousal support was not well-taken and was dismissed. On October 29, 1998, appellee filed a motion for expenses and attorney fees incurred in litigating the motions before the trial court and for attorney fees to defend this appeal. On November 19, 1998, the trial court heard appellee's motion for expenses and attorney fees. By judgment entry filed on December 8, 1998, the trial court declined to award appellee expenses and attorney fees incurred through the date of trial, but awarded appellee $3,500 in attorney fees to defend this appeal. On December 29, 1998, appellant appealed the December 8, 1998 judgment entry granting appellee attorney fees.
Since both appeals involve the same factual circumstances and parties, we consolidated the appeals on February 18, 1999. Appellant has asserted three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PETITIONER-APPELLANT IN ADMITTING TESTIMONY AND EVIDENCE OF PETITIONER-APPELLEE'S "EXPERT."
In his first assignment of error, appellant argues that Ryan's Report should not have been admitted as evidence because appellee delayed in disclosing it. In addition, appellant argues that the report was inadmissible because Ryan was not disclosed in the pretrial statement as an expert witness and was not qualified to testify as an expert under Evid.R. 702 and 703. Appellant further argues that even if Ryan is qualified, the trial court erred by allowing her curriculum vitae ("C.V.") and her Report into evidence because they are based upon hearsay and "opinions of law" and are irrelevant. Finally, appellant argues that Ryan's opinion as to the valuation of A.W. should not have been admitted since she "refused to take responsibility" for her Report. We disagree.
Appellant first argues that since appellee failed to disclose Ryan's Report before trial and failed to submit a pretrial statement, he was prejudiced. The record reflects that both parties were responsible for the delay in discovery. Appellee claimed that appellant delayed in providing A.W.'s financial documents for Ryan to review. As a result, appellee was unable to provide appellant with Ryan's Report until the day of trial. Appellant claimed that appellee unnecessarily delayed in providing him with Ryan's Report. However, the trial court, without placing blame on either party, provided appellant with additional time to prepare. Therefore, appellant has failed to demonstrate any prejudice.
On April 1, 1998, the trial court ordered each party to submit a pretrial statement. However, appellant's counsel stated on June 29, 1998 that while appellee did not comply with the trial court's pretrial order, he would "let it ride." We find that appellant failed to object to the pretrial statement and the objection was therefore waived. See City of Cleveland v. Masseria
(June 6, 1991), Cuyahoga App. No. 58651, citing State v. Glaros
(1960), 170 Ohio St. 471.
When addressing whether Ryan is qualified to testify as an expert, we must consider Evid.R. 702 and 703. Evid.R. 702 states in relevant part:
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons * * *;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
Evid.R. 703 states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Evid.R. 703 is satisfied when the expert bases his opinion in whole or in part on facts or data perceived by him. State v.Solomon (1991), 59 Ohio St.3d 124.
The test for determining the admissibility of expert testimony is whether the expert witness will aid the trier of fact in determining a fact issue or understanding the evidence.Joyce-Couch v. DeSilva (1991), 77 Ohio App.3d 278, 285, citingAlexander v. Mt. Carmel Medical Center (1978), 56 Ohio St.2d 155,159. Evid.R. 702(C) permits expert testimony based upon scientific evidence provided that the scientific evidence is reliable. Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607,611.
The admissibility of expert testimony or the determination of whether a witness meets the criteria of Evid.R. 702 to testify as an expert is within the trial court's sound discretion. In reRobbins (Feb. 16, 1999), Butler App. No. CA98-04-078, unreported, at 3; Fallang v. Fallang (Dec. 1, 1997), Butler App. No. CA97-03-043, unreported, at 13. Accordingly, the trial court's decision to admit expert testimony will not be reversed on appeal absent a showing that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Id.; Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In determining whether Ryan met the requirements to testify as an expert, we first note that appellant did not object to Ryan's qualifications to testify as an expert. The record reflects that: (1) Ryan's testimony as to the fair market valuation of A.W. is beyond the knowledge of a lay person; (2) Ryan is a licensed and certified public accountant with over twenty years of experience; (3) Ryan's opinion was based upon financial statements and other data and facts which consist of specialized information. Therefore, the trial court did not abuse its discretion in finding that Ryan was qualified as an expert under Evid.R. 702. In addition, the record demonstrates that Ryan based her opinion on facts and data perceived by her. Accordingly, Evid.R. 703 was not violated.
Appellant next challenges the admissibility of Ryan's expert testimony. We find that the purpose of Ryan's testimony was to aid the fact finder to determine the value of A.W. at the time of the Agreement, and to ascertain whether appellant had grossly undervalued A.W. in the parties' Agreement. That information would in turn help the trial court to determine if vacation of the Agreement was warranted. Therefore, Ryan's testimony was admissible.
Turning our analysis to Ryan's C.V. and Report, we initially note that appellant did not object to the admission of Ryan's C.V. Accordingly, appellant waived any objection to the admission of Ryan's C.V. Ryan's Report incorporated the following: (1) excerpts from authoritative sources[1]; (2) A.W.'s financial statements; (3) Ryan's summaries of A.W.'s financial statements; and (4) financial statements of K/H Enterprises, Inc. and Hamilton Safe Company, which were entities A.W. owned.[2] Appellant argues that the excerpts and financial statements[3] are based on hearsay. Hearsay precludes a statement, other than one made by the declarant while testifying at trial, which is offered into evidence to prove the truth of the matter asserted. Evid.R. 801(C).
Appellee introduced the excerpts to demonstrate that various accepted valuation methods existed, that Ryan's valuation method was generally accepted, and to explain why Ryan's valuation method as the most applicable in valuating A.W. Ryan did not rely on the excerpts to valuate A.W.; thus, the excerpts were not admitted into evidence for their substantive value. Rather, the excerpts were introduced to demonstrate the reliability of Ryan's valuation method. Accordingly, the trial court did not err in permitting the authoritative excerpts into evidence.
In addition, we find that A.W.'s financial statements are admissible and not based on hearsay. An expert's testimony which establishes the market value and which is based upon "actual sales is not based on hearsay, but is an evaluation of factors essential for the expert to form an opinion." Hosford v. Hosford (Mar. 6, 1980), Cuyahoga App. No. 40380, unreported, at 9. Further, A.W.'s financial statements were not offered for their truth; they were offered to demonstrate the facts and data Ryan relied upon in reaching A.W.'s valuation. In fact, Ryan testified that she would not state that A.W.'s financial statements were truthful or accurate.
Even though Ryan's Report references various documents, Ryan testified that her valuation of A.W. was based purely upon A.W.'s financial statements, tax returns, cash receipts/disbursements, and paid invoices. The A.W. financial documents which Ryan relied upon reflect the income, assets, expenses, profits, and debts of A.W. It is clear that such financial information is relevant and essential to valuate a company's worth. Further, since A.W.'s financial statements were provided by appellant under court order so Ryan could determine A.W.'s fair market value at the time of the Agreement, appellant cannot subsequently object to their validity or admission. See Fiorenza v. Schneider (Sept. 19, 1985), Cuyahoga App. No. 49483, unreported, at 7. Therefore, we find that the financial statements were relevant and not based on hearsay.
Appellant then argues that Ryan's Report contains "opinions of law." After reviewing Ryan's Report and its incorporated documents, we have found no improper "opinions of law."
In appellant's final argument, he challenges Ryan's opinion because Ryan failed to "take any responsibility" for her Report. We find that appellant misunderstood Ryan's testimony. Contrary to appellant's assertion, Ryan did not testify that she would not take responsibility for her Report. Rather, Ryan stated that her valuation was properly conducted by the accepted standards in her field and was based upon the financial documents she received from A.W. Ryan testified that since she did not prepare A.W.'s financial statements and was not able to audit A.W., she would not take responsibility for the accuracy or veracity of A.W.'s financial statements. Assuming that A.W.'s financial statements were correct, Ryan testified that her valuation of A.W. was accurate.
Based on the foregoing, we find that the trial court did not abuse its discretion in permitting Ryan to testify as an expert. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT'S DECISION, VOIDING THE SEPARATION AGREEMENT AND DECREE OF DISSOLUTION, WAS ERROR OF LAW, PREJUDICING THE RIGHTS OF APPELLANT.
In his second assignment of error, appellant argues that there is no competent and credible evidence to support the trial court's decision to vacate the dissolution decree. We disagree.
Civ.R. 60(B) allows a party to seek relief from judgment based upon the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment has been satisfied, released, discharged, or it is no longer equitable to enforce; and (5) any other reason justifying relief from the judgment. To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." Taylor v. Haven (1993), 91 Ohio App.3d 846,849, citing GTE Automatic Elec. v. ARC Industries (1976), 47 Ohio St.2d 146, paragraph two of the syllabus.
The dissolution of a marriage must be based upon the mutual consent of the parties. In re Whitman (1998), 81 Ohio St.3d 239,241. An essential part of the dissolution that strives to achieve mutuality is the separation agreement. See R.C. 3105.63(A)(1). If consent or mutuality did not exist when the parties entered into the separation agreement as a result of fraud, material mistake, or misrepresentation, then there is no agreement upon which the dissolution could be based. Id.
R.C. 3105.63 states that a separation agreement "shall provide for a division of all property." The "division of all property" requirement mandates that all property, jointly or individually owned by the parties, must be disposed of in the separation agreement. In re Murphy (1983), 10 Ohio App.3d 134,137. "When a separation agreement omits assets that are both substantial in relative amount and material * * *, such omissions render the dissolution decree voidable, and the decree can be vacated * * *." Id. at paragraph two of the syllabus. See Beckerv. Becker (Feb. 22, 1999), Butler App. Nos. CA98-02-031 and CA98-02-036, unreported.
When determining whether a dissolution decree should be vacated under Civ.R. 60(B), the trial court should consider:
 What caused the delay in making the motion; whether the delay was reasonable; what personal knowledge the movant had about the nature, extent and value of all the marital assets * * *; what the movant should have known about them in the exercise of ordinary care; whether the movant expressly or implicitly concurred in the property provisions of the separation agreement; what deceptions, if any, were used by the other spouse; and what has intervened between the decree and the motion[.]
 In Re Murphy, 10 Ohio App.3d at 138. Absent an abuse of discretion, a trial court's finding to vacate a dissolution decree will not be reversed. Wiley v. National Garages, Inc. (1984),22 Ohio App.3d 57, 64.
The record reflects that appellant had substantial and material assets which he did not disclose to appellee. For example, appellant had a considerable pension fund which appellee would likely be entitled to share. However, the Agreement states that neither party has any interest in a pension fund. Further, Ryan's testimony demonstrated that A.W.'s value at the time of the Agreement was anywhere from $8,000,000 to $11,000,000. A.W.'s value was never disclosed to appellee, and according to the Agreement, appellee gave up any and all rights in A.W. In addition, the Agreement stated that the division of all property owned, jointly or individually by the parties, was reflected in the Agreement. However, appellant testified that he owned shares in Hamilton Safe and K/H Enterprises, Inc., which he did not disclose to appellee and were not mentioned in the Agreement.
Based upon the foregoing, we find that there was sufficient competent and credible evidence to support the trial court's decision to vacate the dissolution decree under Civ.R. 60(B)(1) and (3). Appellant argues that since appellee voluntarily agreed to the property distribution and to proceed without counsel, appellee should be bound by the Agreement and the trial court is without authority to vacate it. While appellee signed the Agreement without objection and without counsel to represent her, she did not voluntarily agree to be fraudulently mislead. Accordingly, appellant's second assignment of error is without merit.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED, PREJUDICING THE RIGHTS OF PETITIONER/APPELLANT, IN AWARDING ATTORNEY FEES TO PETITIONER/APPELLEE WITHOUT EVIDENCE OR TESTIMONY SUPPORTING SAME.
In his third assignment of error, appellant argues that while the trial court has the authority to grant attorney fees under R.C. 3105.18(H), there was no evidence or testimony supporting the trial court's award of attorney fees. We disagree.
R.C. 3105.18(H) grants the trial court authority to award attorney fees in a dispute arising out of a dissolution and in any related proceeding. See Whitman v. Whitman (May 14, 1996), Hancock App. No. 5-95-47, unreported, at 16-17, reversed and remanded on other grounds, In re Whitman (1998), 81 Ohio St.3d 239. R.C. 3105.18(H) states in part:
 In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings * * * if it determines that the other party has the ability to pay * * *. [The court] shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees.
We find that the phrase "at any stage of the proceeding" includes an appeal of a Civ.R. 60(B) judgment vacating a separation agreement arising out of a dissolution proceeding.
An award of attorney fees lies within the trial court's discretion. Callahan v. Callahan (June 5, 1989), Warren App. No. CA87-11-093, unreported, at 3. A party seeking attorney fees must establish a financial need and demonstrate that the award is reasonable under the circumstances. Id. at 3-4. The financial need is based upon the financial ability of the parties. Id. As a result, any award of attorney fees must be determined through competent and credible evidence. Id. at 4, citing Stout v. Stout
(1982), 3 Ohio App.3d 279.
In the present case, the trial court held a hearing on November 19, 1998 to determine appellee's financial need, appellant's ability to pay, and whether the award of attorney fees would be necessary to protect appellee's interest. At the hearing, appellee presented an itemization of costs she incurred in connection with litigating the motions before the trial court and costs she would incur in defending this appeal. Appellee further testified that she works on her farm, which has not produced sufficient income for her to afford to defend this appeal. The trial court considered prior testimony which established that appellant had the ability to pay appellee's attorney fees. In addition, there was testimony from an attorney who practiced in the area. He opined that $135 per hour was not unreasonable and that the average cost for defending an appeal in the area was approximately $125 to $150 per hour. After reviewing the files in this case, the witness stated that $3,500 was a reasonable cost to defend this appeal.
After considering all the testimony and reviewing all the relevant documents, the trial court determined that appellee needed $3,500 to defend this appeal and that appellant had the ability to pay that amount. Based upon the testimony at the November 19, 1998 hearing, we find that there was competent and credible evidence to support the trial court's decision to award appellee $3,500 in attorney fees. Accordingly, appellant's third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.
[1] The authoritative sources included excerpts from a tax planning and strategy guide which explained different methods of valuation, excerpts from Ohio Bureau of Employment Services public indexes and annual reports.
[2] This group of documents was introduced as Plaintiff's Exhibit "H."
[3] The financial statements are part of Exhibit "H" and are referenced in Ryan's Report. However, appellant argues that Ryan's valuation was based upon inadmissible evidence. Since Ryan based her valuation of A.W. on its financial statements, it appears that appellant is arguing that it is the financial statements in Exhibit "H" that are inadmissible.