[Cite as *Adams v. Black*, 2016-Ohio-30.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Daniel V. Adams, Administrator of the
Estate of Dolores Watson, et al.

Court of Appeals No. E-14-140

Trial Court No. 2013-CV-0413

Appellants

v.

Joann E. Black, et al.

**DECISION AND JUDGMENT**

Appellees

Decided: January 6, 2016

* * * * *

Timothy B. Pettorini and Tricia L. Pycraft, for appellants.

Beveraly A. Adams, for appellee Joann E. Black, Individually and
as Trustee and the Joann E. Black Revocable Trust.

Rebecca J. Bennett and Russell Rendall, for appellee Jason Smith.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from a judgment of the Erie County Court of Common

Pleas that granted the summary judgment motions of defendants-appellees, Joann E.

Black, individually and as trustee of the Joann E. Black Revocable Trust, the Joann E. Black Revocable Trust, and Jason Smith, and thereby dismissed the complaint of plaintiffs-appellants, Daniel V. Adams, Administrator of the Estate of Dolores Watson, et al. Appellants challenge that judgment through a single assignment of error:

> The trial court erred as a matter of law by granting summary judgment to Jason Smith and Joann E. Black, individually and as trustee of Joann E. Black Revocable Trust and Joann E. Black Revocable Trust.

{¶ 2} The undisputed facts of this case are as follows. The plaintiffs-appellants in this case are the estate of Dolores Watson, and her eight surviving children. Appellee, the Joann E. Black Revocable Trust, is the owner of a vacation home located on Kelley's Island, in Erie County, Ohio. The home has three stories, with the kitchen, living room, a bedroom and bathroom on the main floor, a loft bedroom on the second floor, and a bathroom and two bedrooms on the lower walkout level. While on the main floor, one must walk past the stairwell to the lower level in order to reach the bedroom and bathroom that are on the main floor. The stairwell that leads from the main level to the lower level is partially open at the top, so that as one walks down the stairs the floor of the main level is on the right, with a wooden railing separating the living room from the stairwell. As one faces down the stairwell, there is no handrail at the top of the stairs. There is, however, a handrail that runs along the right hand side of the stairs along the bottom third of the stairwell.

2.

{¶ 3} On February 22, 2011, plaintiff-appellant, Sarah Watson, entered into a rental agreement with appellee Joann Black for the lease of the home from June 12 to June 17, 2011. Appellee Jason Smith was the listing agent and individual whom Watson contacted regarding the rental. Watson and members of her family had planned a vacation on Kelley's Island, during which various members of the family would stay at the home at different times throughout the week. On June 12, 2011, at around 4:30 in the afternoon, Sarah Watson, her 77-year-old mother Dolores Watson, and Sarah's niece Stella Adams, arrived at the property. Although other family members also came that day, only Sarah, Dolores and Stella had planned to spend that night at the home. When the group arrived at the home, they toured the property. During the tour, Dolores walked down the stairwell to the lower level with her back to the wall and holding her daughter Thelma's hand. While on the main floor, she also walked past the stairwell toward the bathroom and bedroom, where she placed her suitcase, on at least one occasion. Following dinner, Sarah's sister and brother-in-law, Thelma and Harold Walter, and sister-in-law Barb Adams, left the island. Throughout the remainder of the evening, Sarah, Dolores and Stella stayed on the main floor, where they socialized and watched television. Sarah retired to her room on the second floor at around 11:45 p.m.

{¶ 4} Shortly before 1:00 a.m. on June 13, Stella retired to sleep in the bedroom on the main floor. Dolores chose to sleep on the couch in the living room. Just as she was beginning to fall asleep, Stella heard a loud noise. She came out of her room and found that Dolores had fallen down the stairwell to the lower level. When Stella reached

3.

Dolores at the bottom of the stairs, Dolores told her she had been bringing Stella a pillow and to tell her good night. Sarah and Stella both testified at deposition to the lighting conditions in the home. Sarah stated that when she went to bed around 11:45, many of the recessed lights on the main floor, including the light in the hallway at the top of the stairwell at issue, were on. Upon hearing Stella scream, she came back downstairs. Sarah testified that when she came back downstairs, the same lights were on that had been on when she went up to bed. She further stated that no light was on at the bottom of the stairs in the lower level. When she spoke to her mother immediately after the fall, Dolores told her that she tried to grab a handrail but there was not one. Stella testified that when she went to bed, dim lights were on over the fireplace and in the kitchen area.

{¶ 5} Dolores sustained various injuries from her fall and was transported by air ambulance to a hospital in Toledo, Ohio. She remained there for several days and was then transferred to a rehabilitation facility. While at that facility, however, she choked on a meal and subsequently had to be placed on a ventilator. Her health declined over the next several months, and on October 30, 2011, Dolores passed away.

{¶ 6} On June 12, 2013, appellants filed a complaint in the court below against appellees for wrongful death, personal injuries and loss of consortium. Appellants alleged that through a combination of inadequate lighting and the lack of a handrail on the stairs, appellees failed to maintain a reasonably safe environment and that as a direct and proximate result of that negligence, Dolores Watson suffered severe injuries that ultimately lead to her death. Appellees moved for summary judgement, asserting that

they had not breached any duty of care to appellants and that appellants could not prove that any alleged defects in the home caused the decedent's fall.  Following appellants' response, the lower court granted summary judgment to appellees and dismissed the case.

{¶ 7} In their sole assignment of error, appellants assert that the lower court erred in granting summary judgment to appellees.

{¶ 8} An appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard as the trial court.  *Lorain Nat'l Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).  Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law.  Civ.R. 56(C).

{¶ 9} "Liability for tortious conduct is premised upon the existence of an express duty, albeit common law or statutory, owed by the defendant to the plaintiff."  *Applegate v. Duncanside Park*, 28 Ohio App.3d 88, 90, 502 N.E.2d 249 (11th Dist.1986).  In cases of premises liability, the legal status of the injured party while on the land of another determines the duty of care which she is owed by the landowner.  *Wiley v. Nat'l Garages, Inc.*, 22 Ohio App.3d 57, 59, 488 N.E.2d 915 (2d Dist.1984).  It is undisputed that Dolores Watson was a business invitee while in the rental home.  In Ohio, the owner of a premises owes a duty to a business invitee to maintain the premises in a reasonably safe condition and to warn the invitee of any latent dangers.  *Paschal v. Rite Aid Pharmacy, Inc.* 18 Ohio St.3d 203, 480 N.E.2d 474 (1985).  The landowner, however, is not an

5.

insurer of a business invitee's safety, *id.* at 203, and the landowner has no duty to protect against dangers "which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus. This is commonly referred to as the open-and-obvious doctrine.

{¶ 10} The rationale underlying the open-and-obvious doctrine is "that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). As this court explained in *Semprich v. County of Erie*, 6th Dist. Erie No. E-12-070, 2013-Ohio-3561, ¶ 12:

> Courts must consider whether the object or danger itself was observable. *Haymond v. BP America,* 8th Dist. Cuyahoga No. 86733, 2006-Ohio-2732, ¶ 16. Even when an invitee does not actually see the object or danger until after he or she falls, no duty exists when the invitee could have seen the object or danger if he or she had looked. *Id.* The issue of whether a risk was open and obvious may be decided by the court as a matter of law when only one conclusion can be drawn from the established facts. *Witt v. Saybrook Invest. Corp.*, 8th Dist. Cuyahoga No. 90011, 2008-Ohio-2188, ¶ 21, citing *Klauss v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 84799, 2005-Ohio-1306, ¶ 18. But, where reasonable minds could reach different

conclusions as to the obviousness of the risk, the issue should be resolved by a jury. *Id.*

{¶ 11} A corollary of the open-and-obvious doctrine is the "step-in-the-dark rule," which provides that one who intentionally steps from a lighted area into total darkness, without knowledge, information, or investigation as to what the darkness might conceal, is liable for his or her own injuries as a matter of law. *Leonard v. Modene and Assoc., Inc.*, 6th Dist. Wood No. 05-WD-085, 2006-Ohio-5471, ¶ 54, citing *Flury v. Central Publishing House*, 118 Ohio St.154, 160 N.E. 679 (1928); *McKinley v. Niederst*, 118 Ohio St. 334, 160 N.E. 850 (1928). "'Darkness' is always a warning of danger, and for one's own protection it may not be disregarded." *Jeswald v. Hutt*, 15 Ohio St.2d 224, 239 N.E.2d 37 (1968), paragraph three of the syllabus.

{¶ 12} For purposes of summary judgment, we must assume that at the time of Dolores' fall, the area that she traversed was dimly lit. Appellants contend that genuine issues of material fact remain regarding whether the danger created by the stairwell was open and obvious to Dolores, given the dim lighting and lack of a handrail in the home. In support, they assert that Dolores had previously not traversed the area under the same lighting conditions and that although she had earlier walked down the stairs, she did so with assistance and with her back to the wall. Appellants therefore assert that the lower court erred in granting appellees summary judgment on the basis of the open and obvious doctrine.

7.

**{¶ 13}** Upon review, we find that although there may be varying views as to the level of lighting in the home at the time of the decedent's fall, the lighting combined with the lack of a handrail does not raise a genuine issue of *material* fact. As this court found in *Meilink v. AAA Northwest Ohio*, 6th Dist. Lucas No. L-98-1139, 1998 WL 833570, *2 (Dec. 4, 1998), "the amount of light in a given area is an open and obvious condition against which [the injured party] should have taken precautions, if the lighting was inadequate for her individual needs." As noted above, darkness is always a sign of danger. It requires increased diligence on the part of an ordinary person and one "who disregards a dark condition does so at his or her own peril." *Swonger v. Middlefield*, 11th Dist. Geauga No. 2003-G-2547, 2005-Ohio-941, ¶ 13.

**{¶ 14}** Viewing the evidence in a light most favorable to appellants, reasonable minds can only conclude that the stairwell, with its attendant lighting and lack of a handrail, was an open and obvious hazard and appellees did not breach a duty of care by failing to warn the decedent of its danger or protect her from it. Accordingly, the lower court did not err in granting appellees summary judgment and the sole assignment of error is not well-taken.

**{¶ 15}** On consideration whereof, the court finds that substantial justice has been done the parties complaining, and the judgment of the Erie County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

                                                                    Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                     _____

                                                                        JUDGE

Thomas J. Osowik, J.

                                      _____

Stephen A. Yarbrough, P.J.                                   JUDGE
CONCUR.

                                      _____

                                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.